**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
LASHAWN LEMMONS,                        )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Civil Action No. 04-705 (RBW)
                                        )
GEORGETOWN UNIVERSITY                   )
HOSPITAL, et al.,                       )
                                        )
                    Defendants.         )
                                        )
_____)


**MEMORANDUM OPINION**

        LaShawn Lemmons ("the plaintiff") brings this action against Georgetown University

Hospital ("the Hospital") and Debbie Ellerby ("the defendants"),[1] alleging violations of the

District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401 et seq. (2001), and 42

U.S.C. § 1981 (2000) ("Section 1981"), that were committed during the course of her

employment as a laboratory technologist with the Hospital.  On May 4, 2006, the Court issued a

Memorandum Opinion and Order granting in part and denying in part the defendants' motion for

summary judgment on the plaintiff's discrimination and retaliation claims.  Memorandum

Opinion ("Opinion").[2]  Currently before the Court is the plaintiff's motion to alter or amend the

Court's judgment pursuant to Federal Rule of Civil Procedure 59(e) ("Pl.'s Mot.") and the

_____

        [1] Debbie Ellerby is the Administrative Director of the Department of Laboratory Medicine at the Hospital.
Defs.' Mot., Ex. 2 (Declaration of Debbie Ellerby) ("Ellerby Decl.") ¶ 1.

        [2] The memorandum opinion is published as Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76
(D.D.C. 2006).

defendants' motion for reconsideration pursuant to Federal Rule of Civil Procedure 54(b)

("Defs.' Mot.").[3]  For the reasons set forth below, the Court denies both parties' motions.

## I. Background

The facts of this case are set forth in detail in this Court's prior opinion.  Opinion at 2-11.

However, it is helpful to recite them briefly here.

The plaintiff, an African-American woman belonging to a religious organization known

as the Congregation of Universal Wisdom, has been employed by the Hospital as an at-will part-

time technologist since 1999.[4]  Amended Complaint ("Am. Compl.") ¶¶ 10-12, 23; Defendants'

Motion for Summary Judgment ("Defs.' Sum. Judg. Mot.") ¶ 56.  In the spring of 2002, the

plaintiff voiced concerns to her immediate supervisors regarding the manner in which

tuberculosis ("TB") samples were being handled and stored in the Hospital's main laboratory

incubator.  Am. Compl. ¶¶ 15-16.  In May 2002, "[w]hen no action was taken [by her

supervisors] . . . to remedy the improper handling and storage of the TB samples," the plaintiff

submitted a memorandum to defendant Ellerby and other Hospital personnel reiterating her

---

[3]  The following papers have been submitted in connection with these motions:  (1) Defendants' Opposition to Plaintiff's Rule 59(e) Motion to Amend or Alter the Judgment ("Defs.' Opp."); (2) Plaintiff's Reply to Defendants' Opposition to Motion to Alter/Amend Judgment ("Pl.'s Reply"); (3) Plaintiff's Opposition to Defendants' Motion to Alter/Amend Judgment ("Pl.'s Opp."); and (4) Defendants' Reply in Further Support of Their Motion for Reconsideration of the Court's May 4, 2006 Order ("Defs.' Reply").

[4]  The plaintiff currently works as a part-time accessioning technologist in the Hospital's Chemistry Laboratory.  Defendants' Motion for Summary Judgment ("Defs.' Sum. Judg. Mot."), Ex. 2 (Declaration of Debbie Ellerby) ("Ellerby Decl.") ¶¶ 2, 11.  Previously, the plaintiff had been employed as a part-time laboratory technologist in both the Chemistry and Microbiology Laboratories.  Id. ¶¶ 4-5, 10.  The difference between the laboratory technologist positions and the accessioning technologist position is explored in the Court's prior opinion. Opinion at 2-5; see also Ellerby Decl. ¶¶ 4-10.

concerns.[5]  Id. ¶ 17.  The plaintiff also alleged in this memorandum that one of her supervisors,

Marcia Betaharon, was subjecting her to "some very deliberate and cruel harassment devices"

and, inter alia, "increasingly using her power as Team Leader to unjustifiably criticize and

complain about [the plaintiff's] work performance in such a way as to question the validity of

[the plaintiff's] skills as a Microbiology Tech."  Plaintiff's Opposition to Defendants

Georgetown University Hospital's and Debbie Ellerby's Motion for Summary Judgment ("Pl.'s

Sum. Judg. Opp."), Exhibit ("Ex.") F (May 22, 2002 letter from LaShawn Lemmons to Sharon

Novak, Debbie Ellerby, Zeni Evangelista, and David Garvin) ("May 22, 2002 Letter") at 1.

Nowhere in the plaintiff's memorandum did she intimate that the harassment she described was

racially based or racially motivated.  See generally id.

As a result of its investigation into the plaintiff's allegations of harassment, the Hospital

discovered that the plaintiff was not fully trained as a laboratory technologist.  Defs.' Sum. Judg.

Mot. ¶ 25; see also Am. Compl. ¶ 21(d).  This discovery led the Hospital to request that the

plaintiff either undergo further training to become a qualified, full-time technologist or retain her

present duties in a part-time capacity under a new title and a lower pay grade.  Defs.' Sum. Judg.

Mot., Ex. 16 (August 30, 2002 letter from Debbie Ellerby to LaShawn Lemmons) at 1; see also

Am. Compl. ¶¶ 21(f)-(i).  The plaintiff refused to participate in the additional training "because

she felt she was being railroaded into an unfair training regime that would ultimately lead to her

termination."  Pl.'s Sum. Judg. Opp. ¶ 41.  Instead, the plaintiff elected, "with great

---

[5]  Dissatisfied with the Hospital's lack of response, the plaintiff then contacted the Occupational Health and
Safety Administration ("OSHA") and again expressed her concerns regarding the TB samples.  Am. Compl. ¶ 19.
According to the plaintiff, as a result of her complaint to the OSHA, "the matter was investigated, and the TB
samples were returned to the proper negative pressure incubator."  Id. ¶ 20.

reservations," to transfer to the part-time technologist position, where she remains to this date. Defs.' Sum. Judg. Mot., Ex. 15 (September 23, 2002 letter from LaShawn Lemmons to Debbie Ellerby) at 2.

The plaintiff and the defendants also clashed over the Hospital's policy that all District of Columbia employees involved in direct or indirect patient care receive an annual health examination, including a tuberculin Purified Protein Derivative ("PPD") skin test, also known as a Mantoux test.  Defs.' Sum. Judg. Mot., Ex. 18 (Georgetown University Hospital Health Policy 501) at 1, 3.  The defendants contend that the Hospital's health clearance policies are "strictly enforce[d]" and that "an employee's failure to take the required PPD test presents a significant risk of liability for the Hospital."  Defs.' Sum. Judg. Mot. ¶ 47.  Nevertheless, after receiving notes from the plaintiff's physician, the Hospital granted the plaintiff a deferral from the PPD skin test for medical reasons in the spring of 2002 and 2003.  Id. ¶¶ 51-53; see also id., Ex. 24 (March 28, 2002 note from Dr. Kumuda Reddy); id., Ex. 25 (April 24, 2003 note from Dr. Kumuda Reddy).  In addition to raising a medical objection to the PPD tests, the plaintiff presented the Hospital with two letters signed by the Pastor of the Congregation of Universal Wisdom.  Defs.' Sum. Judg. Mot., Exs. 27 and 28 (August 26, 2003 and September 26, 2003 letters from Walter P. Schilling); see also Defs.' Sum. Judg. Mot. ¶ 56; Pl.'s Sum. Judg. Opp. ¶ 56.  These letters state that PPD skin tests "are forbidden by the religious [tenets] of the

4

Congregation of Universal Wisdom," of which the plaintiff is a member.[6]  Defs.' Sum. Judg.
Mot. ¶ 56.

On November 4, 2003, Hospital personnel ultimately concluded
that the plaintiff's continued refusal to submit to a PPD skin test was "unacceptable."  Defs.'
Sum. Judg. Mot., Ex. 29 (November 4, 2003 e-mail from Paula Sullivan to Dr. Princy Kumar).
Consequently, on November 19, 2003, the Hospital's Director of Health Services issued a
Statement of Work Status, which indicated that the plaintiff was "not able to perform the
essential functions of [her] job" due to her refusal to take the PPD skin test.  Defs.' Sum. Judg.
Mot., Ex. 30 (Statement of Work Status).  On that same day, Ellerby mailed the plaintiff a letter
informing her that she was suspended without pay as of November 21, 2003, because of her
"failure to comply with the health care requirements at Georgetown University Hospital."  Defs.'
Sum. Judg. Mot., Ex. 31 (November 19, 2003 letter from Debbie Ellerby to LaShawn Lemmons).
The letter further stated that the plaintiff had thirty days from the effective date of her suspension
to complete all elements of her annual physical clearance or she would be terminated.[7]  Id.

On September 22, 2003, before her suspension for refusing to take the PPD skin test, the
plaintiff, acting pro se, filed a lawsuit against the defendants in the Superior Court of the District
of Columbia.  Defs.' Mot., Ex. 30 (Complaint).  Following her suspension, the plaintiff retained

---

[6]  Specifically, the first letter states that (1) under the tenets of the plaintiff's church, "[t]he injection into the
body of medication or other matter or substance that defy natural law" is sacrilegious, and (2) because "[t]he
Mantoux Test is an intradermal injection of tuberculin," it is specifically forbidden.  Defs.' Sum. Judg. Mot., Ex. 27.
The second letter confirms that the plaintiff is a member of the Congregation of Universal Wisdom and reiterates that
"[n]o member of the Congregation shall have injected, ingested, or infused into the body any foreign materials of
unhealthy or unnatural composition."  Defs.' Sum. Judg. Mot., Ex. 28.

[7]  As discussed in the Court's prior opinion, there is little indication in the record whether, or when, the
plaintiff ultimately submitted to the PPD skin test and was reinstated from her suspension.  Opinion at 9.

counsel and filed an amended complaint on May 9, 2004.  Am. Compl. at 8.  In her amended

complaint, the plaintiff alleged discrimination and retaliation under the DCHRA, which

"provid[es] for a private right of action against employment discrimination on the basis of, inter

alia, race, color, sex, national origin and religion," and Section 1981.  Id. ¶¶ 1-2.  Specifically, the

plaintiff alleged that the defendants "engaged in a concerted pattern of discrimination and

retaliation against her," which included: (1) reducing her hours, "thus denying [her] the

opportunity to continue working in a full-time capacity, causing [her] to lose her health insurance

and other benefits"; (2) refusing to allow her to work overtime; (3) demoting her one grade in

salary; and (4) telling her "that she was no longer qualified to perform the duties she had been

performing satisfactorily for almost three years."  Id. ¶ 21.  The plaintiff therefore claims that the

defendants "have intentionally engaged in discrimination and retaliation against [her] because of

her race and because of her protected activity."  Id. ¶¶ 26, 29.  The plaintiff's amended complaint

expressly states that she "refused to take the Mantoux PPD tuberculosis test on religious and

medical grounds" and that she was suspended from her employment based on this refusal.  Id. ¶¶

21(j)-(k).  However, the plaintiff does not specifically set forth a cause of action for religious

discrimination in the Statement of Claims section of her amended complaint.  See id. ¶¶ 24-34.

On May 20, 2005, the defendants moved for summary judgment on the plaintiff's racial

discrimination and retaliation claims.  Defs.' Sum. Judg. Mot. at 1.  Due to the illness of her

counsel, the plaintiff requested, and was granted, multiple extensions of time in which to respond

to the defendants' motion before finally filing an opposition brief on September 5, 2005.[8]  See

---

[8]  The plaintiff's opposition was accompanied by 189 pages of exhibits and supporting material.  See Table
of Exhibits in Support of Plaintiff's Opposition at 1.

Dkt. Nos. 16, 21, 23 (motions to file out of time); see also Pl.'s Sum. Judg. Opp.  Then, on

September 21, 2005, the plaintiff's counsel filed a motion to withdraw from his representation of

the plaintiff, citing his "deteriorating health" and his doctor's advice that he "cease all

professional activities as quickly as possible."  Motion to Withdraw at 1.  The Court granted this

motion in December 2005, and the plaintiff proceeded without the representation of counsel until

the defendants' summary judgment motion was resolved.  December 14, 2005 Minute Order.

On May 4, 2006, the Court issued a Memorandum Opinion and Order which granted in

part and denied in part the defendants' motion for summary judgment.  Opinion at 32.  First, the

Court found that the plaintiff "ha[d] completely failed to demonstrate that any of the unfavorable

employment decisions alleged in the complaint give rise to an inference of intentional [racial]

discrimination."  Id. at 15.  Second, the Court found that the plaintiff's retaliation claims "are not

based on any activity statutorily protected by the DCHRA or Section 1981."  Id. at 22 (internal

quotation marks and citation omitted).  The Court therefore concluded that the plaintiff had not

established a prima facie case of race discrimination or retaliation and granted summary

judgment to the defendants on these claims.  See id. at 13-24, 32.  However, the Court also

concluded that the plaintiff had articulated a cause of action for religious discrimination under

the DCHRA in the amended complaint, based on her representation that she was suspended for

refusing to take the PPD skin test despite her stated religious objections.  Id. at 24-26; see also id.

at 25-26 (concluding "that the plaintiff's complaint, when read as a whole under the liberal

pleading standards of [Federal Rule of Civil Procedure 8], provided the defendants with

sufficient notice of the plaintiff's claim of religious discrimination under the DCHRA") (internal

quotation marks, bracketing, and citations omitted).  Because the parties failed to address this

claim in their summary judgment pleadings, id. at 24, and because the plaintiff's federal and

constitutional claims had been resolved, id. at 26, the Court remanded this action to the Superior

Court of the District of Columbia, id. at 26-32.

On May 18, 2006, the defendants filed a motion for reconsideration of the Court's

conclusion that the plaintiff's complaint advanced a claim of religious discrimination.  Defs.'

Mot. at 1.  Specifically, the defendants argue that (1) the plaintiff's amended complaint "does not

state a claim for religious discrimination under the Federal Rules," id. at 8; (2) "[t]he natural

narrowing of claims and issues through the pretrial process made clear that [the] [p]laintiff was

not pursuing a religious discrimination claim," id. at 6; see also id. at 10 (contending that "[the]

[p]laintiff's subsequent descriptions of her claims in both her Joint Statement of the Case . . .

[and] her sworn deposition testimony[] made it clear that [she] was not bringing a [claim of

religious discrimination]"); and (3) to the extent the plaintiff did articulate a religious

discrimination claim in her complaint, she "unequivocally abandoned that claim in her

deposition," id. at 9.[9]  In response, the plaintiff argues that (1) she articulated a cause of action

for religious discrimination under the DCHRA in her amended complaint, Pl.'s Opp. at 5; (2) the

Joint Statement of the Case is not dispositive of her religious discrimination claim, because the

omission of a claim from a "joint status 'meet and confer' statement" does not serve to bar or

waive that claim if it is adequately stated in the complaint, id. at 5-6; and (3) her deposition

_____

[9] The defendants also contend, albeit in cursory fashion, that the plaintiff's religious beliefs are "not bona
fide."  Defs.' Mot. at 9 n.2.  The plaintiff disputes this contention.  Pl.'s Opp. at 9-10.  However, because the proper
inquiry at this time is whether the amended complaint "provide[s] the defendant with fair notice of what the
plaintiff's [religious discrimination] claim is and the grounds upon which it rests," Dura Pharm., Inc. v. Broudo, 544
U.S. 336, 346 (2005) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1955)) (internal quotation marks omitted), and
because the issue of the bona fide nature of the plaintiff's religious beliefs speaks more to the merits of the plaintiff's
claim rather than whether it has been sufficiently asserted, this Court need not resolve this question here.

testimony should not be construed as an abandonment of her claim of religious discrimination, id. at 6-9.

On May 31, 2006, having retained new counsel, the plaintiff filed a motion to alter or amend the Court's order granting summary judgment as to her claim of retaliation.[10]  Pl.'s Mot. at 3.  The plaintiff contends in this motion that due to "her prior counsel's illness and subsequent withdrawal from the case," certain relevant documents were not included or referenced in her opposition to the defendants' motion for summary judgment.  Id. at 1-2.  The plaintiff further asserts that these documents demonstrate that, contrary to the Court's conclusion, she engaged in statutorily protected activity sufficient to state a prima facie case of retaliation under the DCHRA and Section 1981.  Id. at 2-3.  The defendants, however, argue that the plaintiff's motion to alter or amend judgment is untimely filed, Defs.' Opp. at 3-4, and "does nothing more than rehash arguments previously made and . . . offer evidence that [the plaintiff] was fully aware of and could have submitted at the time she filed her [o]pposition," id. at 8.

## II. Standards of Review

The parties disagree as to the precise standard under which their respective motions for reconsideration should properly be evaluated.  See Defs.' Mot. at 5-6; Defs.' Opp. at 3-4; Pl.'s Reply at 2-4.  The defendants contend that the plaintiff's motion, although filed pursuant to Rule 59(e), should be treated as a motion for relief from entry of judgment pursuant to Rule 60(b). Defs.' Opp. at 3-4; see also Pl.'s Reply at 2-4 (disputing the defendants' contention).  The defendants also claim that their own motion for reconsideration is properly brought neither as a Rule 59(e) motion nor a Rule 60(b) motion, but rather as a Rule 54(b) motion for relief from an

---

[10] The plaintiff does not challenge the Court's grant of summary judgment as to her discrimination claims.

interlocutory order.  Defs.' Mot. at 5-6.  As discussed further below, the Court concludes that both parties' motions should be denied regardless of whether they are treated as filed under Rule 54(b), 59(e), or 60(b).  However, a recitation of each standard is nonetheless appropriate.

Rule 54(b) permits a court to revise or reconsider any order "which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties"—that is, any order of interlocutory judgment—"at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties."[11]  Fed. R. Civ. P. 54(b).  As the defendants note, motions for reconsideration of interlocutory orders "are within the discretion of the trial court," Lewis v. United States, 290 F. Supp. 2d 1, 3 (D.D.C. 2003) (internal quotation marks and citation omitted), and may be entered "as justice requires," Judicial Watch v. Dep't of Army, ___ F. Supp. 2d ____, ____, Civ. No. 04-301, 2006 WL 3600329, at *6 (D.D.C. Dec. 12, 2006) (internal quotation marks and citation omitted); see id. (further stating that "the 'as justice requires' standard amounts to determining whether reconsideration is necessary under the relevant circumstances") (internal quotation marks and citation omitted); see also Smith v. Massachusetts, 543 U.S. 462, 475 (2005) (Ginsburg, J., dissenting) (describing as "hardly novel" the view that "[a] district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment") (internal quotation marks and citation omitted); 47 Am.

---

[11]  The denial of a motion to dismiss, for example, may properly be revisited by the Court pursuant to Rule 54(b) upon request of the moving party.  See Ogunfitidimi v. McDonald Corp., Civ. No. 04-7015, 2004 WL 2595886, at *1 (D.C. Cir. Nov. 15, 2004) (quoting Rule 54(b)).  Similarly, orders granting partial summary judgment are interlocutory in nature and may be revised prior to final judgment under Rule 54(b).  See Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 744 (1976) (holding that orders granting partial summary judgment "are by their terms interlocutory") (citation omitted); Childers v. Slater, 197 F.R.D. 185, 190 (D.D.C. 2000) (noting that "interlocutory judgments [like those for partial summary judgment] . . . are left subject to the complete power of the court rendering them to afford such relief from them as justice requires") (quoting Fed. R. Civ. P. 60(b) advisory committee's note) (internal quotation marks omitted).

Jur. 2d Judgments § 661 (2007) (stating that "[a] motion for relief from judgment applies only to final appealable orders, not interlocutory orders. . . . [h]owever, the trial court retains such plenary power to afford such relief from interlocutory decrees as justice requires") (footnotes omitted); 49 C.J.S. Judgments § 277 (2007) (stating that "[t]he trial court has plenary power to revise, modify, set aside, or vacate a judgment at any time before it becomes final") (footnotes omitted).  As another member of this Court has stated, it is appropriate to grant a Rule 54(b) motion "when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, [or] has made an error not of reasoning but of apprehension." Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks and citation omitted).  "Errors of apprehension may include [the] Court's failure to consider controlling decisions or data that might reasonably be expected to alter the conclusion reached by the [C]ourt." Id. (internal quotation marks and citation omitted). The Court's discretion to modify or reconsider its order under Rule 54(b), however, is nonetheless "limited by the law of the case doctrine and subject to the caveat that, where litigants have once battled for the [C]ourt's decision, they should neither be required, nor without good reason permitted, to battle for it again." Judicial Watch, ___ F. Supp. 2d at ____, 2006 WL 3600329, at *7 (internal quotation marks and citation omitted).  Finally, "it is clear that courts have more flexibility in applying Rule 54(b) than in determining whether reconsideration is appropriate under Rules 59(e) and 60(b)." Cobell v. Norton, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal quotation marks and citation omitted).

A motion to alter or amend judgment pursuant to Rule 59(e) is also subject to the Court's discretion and "need not be granted unless the [Court] finds that there is an intervening change of

controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Messina v. Krakower, 439 F.3d 755, 758 (D.C. Cir. 2006) (internal quotation marks and citation omitted).  "[A] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled, nor is it a vehicle for presenting theories and arguments that could have been advanced earlier."  Fresh Kist Produce, LLC v. Choi Corp., 251 F. Supp. 2d 138, 140 (D.D.C. 2003) (internal quotation marks and citations omitted); see also Messina, 439 F.3d at 759 (stating that Rule 59(e) motions may not simply "rely on the same arguments . . . originally made" by the moving party) (internal quotation marks and citation omitted).  "While the [C]ourt has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an extraordinary measure."  Fresh Kist Produce, 251 F. Supp. 2d. at 140 (citing Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)); see also Jung v. Ass'n of Am. Med. Coll., 184 Fed. Appx. 9, 13 (D.C. Cir. 2006) (noting "the high standard for relief under Rule 59(e)").  Furthermore, Rule 59(e) motions "shall be filed no later than 10 days after the entry of judgment."  Fed. R. Civ. P. 59(e).  However, "[a]n untimely motion under Rule 59(e) may be considered as a motion under Rule 60(b) if it states grounds for relief under the latter rule."  Computer Professionals for Social Resp. v. U.S. Secret Serv., 72 F.3d 897, 903 (D.C. Cir. 1996).

Under Rule 60(b), the Court may grant a party relief from an adverse judgment on grounds, inter alia, of "mistake, inadvertence, surprise, . . . excusable neglect[,] . . . [or] newly discovered evidence which by due diligence could not have been discovered in time [for the

filing of a Rule 59 motion]."[12]  Fed. R. Civ. P. 60(b); <u>see</u> <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 528

(2005) (stating that "Rule 60(b) allows a party to seek relief from a final judgment . . . under a

limited set of circumstances") (footnote omitted).  "Relief under Rule 60(b)(1) motions [for

mistake, inadvertence, surprise, or excusable neglect] is rare; such motions allow district courts

to correct only limited types of substantive errors."  <u>Hall v. CIA</u>, 437 F.3d 94, 99 (D.C. Cir.

2006).  In general, "Rule 60(b) was intended to preserve the delicate balance between the sanctity

of final judgments and the incessant command of the [C]ourt's conscience that justice be done in

light of all the facts."  <u>Smalls v. United States</u>, 471 F.3d 186, 191 (D.C. Cir. 2006) (internal

quotation marks, ellipses, and citation omitted).  The Rule "cannot be employed simply to rescue

a litigant from strategic choices that later turn out to be improvident."  <u>Id.</u> (internal quotation

marks, ellipses, and citation omitted).  Moreover, "[t]o obtain Rule 60(b) relief, the movant must

give the [Court] reason to believe that vacating the judgment will not be an empty exercise or a

futile gesture."  <u>Norman v. United States</u>, 467 F.3d 773, 775 (D.C. Cir. 2006) (internal quotation

marks and citation omitted).  The Court may properly deny a Rule 60(b) motion for

reconsideration of a final judgment where the movant fails to "at least establish that it possesses a

potentially meritorious claim or defense which, if proven, would bring success in its wake."

---

[12]  The catchall provision of Rule 60(b) also authorizes relief from a judgment for "any other reason" for which such relief is justified.  Fed. R. Civ. P. 60(b)(6).  This provision applies only to "extraordinary circumstances" not otherwise covered in Rule 60(b), <u>Plaut v. Spendthrift Farm, Inc.</u>, 514 U.S. 211, 233 (1995) (internal quotation marks and citation omitted), and should be invoked only rarely, <u>Computer Professionals for Social Resp.</u>, 72 F.3d at 903 (noting that "under Rule 60(b)(6)[,] relief should be only sparingly used") (internal quotation marks and citation omitted).  <u>See</u> <u>Liljeberg v. Health Servs. Acquisition Corp.</u>, 486 U.S. 847, 864 (1988) (stating that Rule 60(b)(6) "provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," but that the provision "should only be applied in extraordinary circumstances") (internal quotation marks and citations omitted).

Murray v. District of Columbia, 52 F.3d 353, 355 (D.C. Cir. 1995) (internal quotation marks and citation omitted).

Here, the defendants argue that the Court's order granting summary judgment as to the plaintiff's racial discrimination and retaliation claims and remanding the plaintiff's religious discrimination claim to the Superior Court is not a final judgment but an interlocutory order. Defs.' Mot. at 5-6. As such, the defendants contend that their motion for reconsideration of the Court's order is properly brought pursuant to Rule 54(b), rather than Rules 59(e) or 60(b). Id.; see 12 James Wm. Moore, et al., Moore's Federal Practice § 60.23 (4th ed. 2006) (stating that "Rule 60(b) does not govern relief from interlocutory orders, that is to say any orders in which there is something left for the [C]ourt to decide after issuing the order"). The defendants further argue that even if their motion is properly considered under Rules 59(e) or 60(b), it "[n]onetheless . . . meets [the] requirements of [those rules]."[13] Defs.' Mot. at 5 n.1. The Court is inclined to conclude that its May 4, 2006 Order, which relinquished jurisdiction over the plaintiff's remaining claim and remanded that claim—and this matter—in full to the District of Columbia's Superior Court, "adjudicat[ed] all the claims and the rights and liabilities of all parties" in this Court, and should thus be viewed as a final judgment for the purposes of the defendants' motion for reconsideration. Fed. R. Civ. P. 54(b); see Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 714-15 (1996) (finding that a remand order based on abstention principles constituted a final judgment for the purpose of reviewability because, inter alia, (1) "the district court disassociate[d] itself from the case entirely, retaining nothing of the matter on the federal court's docket" and (2) the order "conclusively determine[d] an issue that is separate from the

---

[13] The defendants do not elaborate.

14

merits, namely, the question whether the federal court should decline to exercise its jurisdiction in the interest of comity and federalism") (discussing <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1 (1983)).  As detailed more fully below, however, the Court finds that the defendants' motion should not be granted even under the "more flexib[le]" standard of Rule 54(b).  <u>Cobell</u>, 224 F.R.D. at 272 (internal quotation marks and citation omitted).  Thus, the Court need not determine whether the motion should properly have been brought under Rules 59(e) or 60(b).

The defendants also argue that the plaintiff's motion to alter or amend judgment was filed untimely under Rule 59(e) and should thus be denied or, at the very least, converted into a Rule 60(b) motion for relief from judgment and considered on that basis.[14]  Defs.' Opp. at 3-4.  Again, however, the Court concludes that it is clear that the plaintiff's motion should be denied whether or not it is considered as a Rule 59(e) motion.  It is therefore unnecessary for the Court to decide under which rule the plaintiff's motion is properly brought.

## III. Analysis

*A.  The Plaintiff's Motion for Reconsideration*

The plaintiff proffers two pieces of documentary evidence in support of her motion for reconsideration, both of which purportedly "demonstrat[e] that [she] did engage in protected activity" sufficient to establish a <u>prima</u> <u>facie</u> claim of retaliation under the DCHRA and Section

---

[14]  The defendants contend that because the Court issued its order granting summary judgment to the defendants on the plaintiff's racial discrimination and retaliation claims on May 10, 2006, the plaintiff's May 31, 2006 motion to alter or amend judgment was filed outside of the ten-day period prescribed by Rule 59(e).  Defs.' Opp. at 3.  The plaintiff responds that her motion was timely filed under the computation of time provided in Federal Rule of Civil Procedure 6.  Pl.'s Reply at 2-3.  The plaintiff further states that she is entitled to relief even if the Court were to treat her motion to alter or amend judgment as filed under Rule 60(b) rather than Rule 59(e).  <u>Id.</u> at 8.

1981.[15]  Pl.'s Mot. at 2; <u>see</u> <u>also</u> Pl.'s Reply at 7 (contending that "[t]he documents submitted by

the [p]laintiff in [her motion for reconsideration] establish that there was other protected activity

in August and September 2002").  One of these documents, a September 2002 memorandum

from the plaintiff to defendant Ellerby, was part of the record upon which the Court relied when

it rendered its May 2006 decision.  Opinion at 5; <u>see also</u> Defs.' Sum. Judg. Mot., Ex. 5

(September 23, 2002 memorandum from LaShawn Lemmons to Debbie Ellerby) ("September

2002 Memo").  The other document, an August 2002 memorandum from the plaintiff to Ellerby,

was admittedly available to the plaintiff at the time that she opposed the defendants' motion for

summary judgment.  Pl.'s Reply at 7; <u>see</u> Pl.'s Mot., Ex. 2 (August 12, 2002 memorandum from

LaShawn Lemmons to Debbie Ellerby) ("August 2002 Memo").  The plaintiff argues, however,

that because her then-counsel "was experiencing a medical emergency and was unable to provide

_____

[15]  For the first time in her reply, the plaintiff also argues that her motion for reconsideration should be
granted due to "an intervening change of controlling law." <u>Messina</u>, 439 F.3d at 758 (internal quotation marks and
citation omitted); <u>see</u> Pl.'s Reply at 4-6.  Specifically, the plaintiff contends that she has established a claim of
retaliation under the standard articulated by the Supreme Court's decision in <u>Burlington N. & Santa Fe Ry. Co. v.</u>
<u>White</u>, ___ U.S. ____, 126 S. Ct. 2405 (2006), in that she has alleged "employer action that 'well might have
dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Pl.'s Reply at 6 (quoting
<u>Burlington</u>, ___ U.S. at ____, 126 S. Ct. at 2415).  <u>Burlington</u>, however, in no way represents a change in the law
that controlled this Court's initial decision.  First, the <u>Burlington</u> Court explicitly states that the standard it adopted
was drawn wholesale "from the formulation set forth by the Seventh and District of Columbia Circuits." <u>Burlington</u>,
___ U.S. at ____, 126 S. Ct. at 2415.  Thus, even if <u>Burlington</u> does represent a change in controlling law for the
entire federal court system, the law of this circuit remains unmoved.  <u>See</u> <u>Rochon v. Gonzales</u>, 438 F.3d 1211, 1219
(D.C. Cir. 2006) (setting forth standard adopted in <u>Burlington</u>).  Moreover, except to the extent that both concern
themselves broadly with allegedly retaliatory conduct in an employment discrimination context, the holding in
<u>Burlington</u> bears absolutely no relation or relevance to this Court's stated reasons for granting the defendants'
motion for summary judgment on the plaintiff's retaliation claim.  <u>Compare</u> <u>Burlington</u>, ___ U.S. at ____, 126 S. Ct.
at 2410-15, <u>with</u> Opinion at 21-24.  Rather, the Supreme Court granted certiorari in <u>Burlington</u> to resolve a specific
circuit split with regard to the anti-retaliation provision of Title VII:  namely, "whether the challenged action [in a
Title VII retaliation claim] has to be employment or workplace related and . . . how harmful that action must be to
constitute retaliation." <u>Burlington</u>, ___ U.S. at ___, 126 S. Ct. at 2410.  By contrast, as stated clearly in this Court's
opinion and reiterated further below, summary judgment on the plaintiff's retaliation claim in this case is founded
specifically and exclusively on the plaintiff's failure to provide "any . . . evidence which would suggest that she had
complained of discrimination based on race, or otherwise engaged in activity protected by the DCHRA or Section
1981[,] before the allegedly retaliatory actions occurred." Opinion at 24.  The <u>Burlington</u> Court does not purport to
address this issue, nor does it suggest or imply in any sense its intention to do so.

Case 1:04-cv-00705-RBW   Document 48   Filed 03/01/07   Page 17 of 34

a full and complete response to the motion," she should now be granted equitable leave "to present evidence, if it exists, that establishes that she engaged in protected activity."  Pl.'s Reply at 7.

The plaintiff's arguments are unpersuasive.  To begin with, the plaintiff fundamentally misstates the grounds for the grant of summary judgment as to her retaliation claim when she asserts that "the [C]ourt specifically concluded [in its May 2006 opinion] that the retaliation claim failed because there was only one incident of protected activity."  Id.  On the contrary, the Court held unambiguously that the plaintiff "failed to demonstrate that she has been subjected to a pattern of retaliatory acts because of activity protected under the DCHRA or Section 1981."  Opinion at 21 (internal quotation marks and citation omitted) (emphasis added).  While the Court did go on to say that "the sole [allegedly] protected activity that the plaintiff identifies in this case is her May 2002 complaint of harassment against her supervisor, Marcia Betaharon," it was not the quantity but the quality of this alleged activity—specifically, the fact that the May 2002 complaint clearly "[did] not refer to harassment or discrimination based on race or any other protected category recognized by either the DCHRA or Section 1981"—which led the Court to grant the defendants' motion for summary judgment on the plaintiff's retaliation claim.  Id. at 23 (internal quotation marks and citations omitted).  Had the plaintiff provided three dozen examples of "protected activity" in the same vein as her May 2002 complaint, the Court's conclusion would have been no less warranted.  See Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (stating that the complaint against which retaliatory conduct allegedly occurred "must in some way allege unlawful discrimination") (emphasis added); see also id. (observing that "[n]ot every [employment] complaint garners its author [legal] protection [against

17

retaliatory action]") (citations omitted); <u>Sitar v. Indiana Dep't of Transp.</u>, 344 F.3d 720, 727-28

(7th Cir. 2003) (affirming grant of summary judgment as to retaliation claim where the plaintiff

"complained only that she felt picked on, not that she was discriminated against 'because of' sex

or gender") (citation omitted).

Moreover, neither document submitted by the plaintiff in support of her motion for

reconsideration amounts to anything resembling "new evidence that is likely to change the

outcome of the case." Pl.'s Reply at 7. That is, even if the Court had not already considered the

September 2002 memorandum in making its decision, and even if equitable concerns merited an

examination of the August 2002 memorandum at this late date, the plaintiff still fails to

demonstrate "that she had complained of discrimination based on race, or otherwise engaged in

activity protected by the DCHRA or Section 1981[,] <u>before the allegedly retaliatory actions</u>

<u>occurred</u>." Opinion at 24 (emphasis added). The August 2002 memorandum expresses the

plaintiff's concerns that she is "being made to go back into a hostile work environment" after

complaining of harassment. August 2002 Memo at 1. It further states her belief that "[her]

employer is discriminating against [her] and retaliating against [her] for coming forward to report

the workplace abuses that [she] suffered." <u>Id.</u> The memo does not mention race or any other

category protected by the DCHRA or Section 1981. <u>See generally id.</u> Indeed, it is entirely

backward-looking, referring only to retaliation allegedly incurred as a result of the plaintiff's

May 2002 complaint and the subsequent harassment investigation. <u>See generally id.</u> Similarly,

the September 2002 memorandum goes into great detail regarding the May 2002 complaint and

the subsequent retaliation, <u>see</u> September 2002 Memo at 1 (stating that "after [the plaintiff] filed

a complaint in May 2002, [she] experienced retaliation"); <u>id</u> (stating the plaintiff's belief that the

July 2002 requirement that she undergo additional training "was both retaliatory and discriminatory"); id. at 2 (stating that comments made during the meeting at which the plaintiff's May 2002 complaint was mediated "suggested that [the defendants] wanted to punish [the plaintiff] (ostensibly for filing the complaint)"), but does not provide any other examples of instances in which the plaintiff purportedly "engaged in statutorily protected activity" sufficient to make out a prima facie retaliation claim, Hussain v. Nicholson, 435 F.3d 359, 366 (D.C. Cir. 2006) (citation omitted).   And while the September 2002 memorandum does make generalized allegations of racial discrimination, September 2002 Memo at 3 (alleging that "since [the plaintiff's employment] no white employees or Microbiology employees in a similar or comparable situation have been asked to take such a demotion or re-train"), the plaintiff does not now allege that any adverse employment action was taken against her as a result of the September 2002 memo.[16]  See generally Pl.'s Mot.; Pl.'s Reply.  Such a causal connection must exist—or, at this stage in the litigation, must at least be alleged—before a prima facie claim of retaliation can be made.  Hussain, 435 F.3d at 366 (stating that "plaintiffs alleging retaliation must demonstrate that (1) they engaged in statutorily protected activity, (2) the employer took an adverse employment action against them, and (3) a causal connection existed between the two") (citation omitted).  In short, the documents relied on by the plaintiff discuss retaliation only in the past tense and exclusively when referring to allegedly retaliatory conduct after the May 2002 complaint, the general and generic contents of which the Court has already determined—and the

---

[16]  To the extent that the plaintiff might claim that her November 2003 suspension was in retaliation for allegations of racial discrimination made in her September 2002 memorandum, such a claim must fail.  Not only has the plaintiff failed to provide any evidence suggesting a causal connection between the memorandum and the suspension, see generally Am. Compl.; Pl.'s Mot.; Pl.'s Reply, but the lack of "close temporal proximity" between the two events itself essentially forecloses an inference of causation strong enough to state a prima facie retaliation claim.  Holcomb v. Powell, 433 F.3d 889, 903 (D.C. Cir. 2006).

plaintiff has already admitted—do not constitute protected activity under the DCHRA or Section

1981.  See Opinion at 21 (observing that "the plaintiff admits that she did not believe the

harassing behavior complained of in her May 22, 2002 memorandum—from which her further

claims of discrimination and retaliation all ultimately flow—was motivated by racial animus")

(citing Defs.' Sum. Judg. Mot., Ex. 1 (Plaintiff's Deposition) at 57 ("Pl.'s Dep.")).  And to the

extent the September 2002 memorandum might itself constitute protected activity in that it

makes some reference to the plaintiff's belief that she was being discriminated against on racial

grounds, the plaintiff has failed to point to any adverse employment actions that were undertaken

as a result of that memorandum.  See Hussain, 435 F.3d at 366; Holcomb v. Powell, 433 F.3d

889, 901-02 (D.C. Cir. 2006).  Thus, the Court cannot "find[] that there is an intervening change

of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice" sufficient to grant the plaintiff's motion for reconsideration pursuant to Rule

59(e), let alone the more demanding Rule 60(b) standard.  Messina, 439 F.3d at 758 (internal

quotation marks and citation omitted).  The plaintiff's motion must therefore be denied.

B.  The Defendants' Motion for Reconsideration

The defendants contend, "[b]ased on facts unknown to the Court at the time," that the

Court should reconsider its conclusion that the plaintiff's amended complaint stated a claim of

religious discrimination under the DCHRA.  Defs.' Mot. at 1; see Opinion at 24-26.  Specifically,

the defendants argue that (1) the plaintiff's complaint fails to provide "a short and plain

statement . . . giv[ing] the defendant fair notice" of a religious discrimination claim, Defs.' Mot.

at 8 (internal quotation marks and citation omitted); (2) "[the] plaintiff's subsequent descriptions

of her claims in both her Joint Statement of the Case . . . [and] her sworn deposition testimony[]

20

make it clear that [she] was not bringing a [claim of religious discrimination]," id. at 10; and (3) any religious discrimination claim asserted in the complaint was "unequivocally abandoned . . . in [the plaintiff's] deposition," id. at 9.  None of the facts submitted by the defendants alter the Court's conclusion "that the plaintiff's [amended] complaint, when read as a whole under the liberal pleading standards of Rule 8 of the Federal Rules of Civil Procedure, provided the defendants with sufficient notice of the plaintiff's claim of religious discrimination under the DCHRA."  Opinion at 25-26.  Furthermore, after carefully examining the relevant caselaw, the Court cannot agree with the defendants that the plaintiff's deposition testimony somehow equates to the implicit abandonment of her religious discrimination claim.  Therefore, and for the reasons that follow, the Court will deny the defendants' motion for reconsideration.

"[T]he Federal Rules of Civil Procedure require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Dura Pharm., Inc., 544 U.S. at 346 (quoting Fed. R. Civ. P. 8(a)(2)).  The "short and plain statement" required by Rule 8(a) "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quoting Conley v. Gibson, 355 U.S. 41, 47 (1955)) (internal quotation marks omitted). Above all, "courts are charged with construing the complaint so as to do substantial justice." Stokes v. Cross, 327 F.3d 1210, 1215 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 8(f)) (internal quotation marks and ellipses omitted).

These rules of pleading "are not meant to impose a great burden upon a plaintiff."  Dura Pharm., 544 U.S. at 347 (citation omitted).  "The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S.

21

232, 236 (1974)) (internal quotation marks omitted).  "To that end, the complaint is construed

liberally in the plaintiffs' favor," and plaintiffs are granted "the benefit of all inferences that can

be derived from the facts alleged."  Stokes, 327 F.3d at 1215 (quoting Kowal v. MCI Commc'ns

Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)) (internal quotation marks omitted).   Furthermore,

because "all that is required [under Rule 8(a)] is that the complaint give the defendants fair notice

of each claim and its basis," Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1118 (D.C. Cir.

2000) (internal quotation marks and citations omitted), "[a] complaint . . . need not allege all that

a plaintiff must eventually prove," Atchinson v. District of Columbia, 73 F.3d 418, 421-22 (D.C.

Cir. 1996).  See Stokes, 327 F.3d at 1215 (stating that a complaint need not "set out in detail the

facts upon which [a plaintiff] bases his claim") (internal quotation marks and citation omitted);

see also Scheuer, 416 U.S. at 236 (noting that "it may appear on the face of the pleadings that a

recovery is very remote and unlikely[,] but that is not the test").

  The liberal pleading standard of Rule 8(a) has been made clear in the specific context of

religious discrimination claims.  As the District of Columbia Circuit has observed, "all that a

Title VII complaint has to say to survive dismissal under [Federal Rule of Civil Procedure]

12(b)(6) is: 'The plaintiff was terminated from his job because of his religion.'"  Ciralsky v. CIA,

355 F.3d 661, 671 (D.C. Cir. 2004) (citations omitted); see also Sparrow, 216 F.3d at 1115

(noting that a complaint stating only that the plaintiff "was turned down for a job because of [his

or her] race" is sufficient to meet the Rule 8(a) standard) (quoting Bennett v. Schmidt, 153 F.3d

516, 518 (7th Cir. 1998)).  Thus, it reasonably follows that a complaint which (1) brings a claim

under a statute forbidding, inter alia, religious discrimination and (2) alleges that the plaintiff was

"suspended . . . from her employment . . . [for] refus[ing] to take [a] Mantoux PPD tuberculosis

22

test on religious and medical grounds," Am. Compl. ¶¶ 15(j), (k), is adequate to "provide the

defendant[s] with fair notice of what the plaintiff's claim is and the grounds upon which it rests,"

Dura Pharm., 544 U.S. at 346 (internal quotation marks and citation omitted).  Cf. Smith v.

Frichtl Steel and Welding, Civ. No. 04-4239, 2005 WL 1267203, at *1 n.1 (S. D. Ill. Apr. 29,

2005) (concluding that complaint failed to provide "short and plain statement" of religious

discrimination claim where the plaintiff "fail[ed] to mention his religious beliefs and fail[ed] to

state how [the defendant] failed to accommodate his alleged religious beliefs").

 Furthermore, the District of Columbia Circuit has recently reemphasized the Supreme

Court's admonition that "[t]he Federal Rules reject the approach that pleading is a game of skill

in which one misstep by counsel may be decisive to the outcome."  Ciralsky, 355 F.3d at 674

(quoting Swierkiewicz, 534 U.S. at 514) (internal quotation marks omitted).  Rather, "the

purpose of pleading is to facilitate a proper decision on the merits."  Id. (internal quotation marks

and citation omitted).  Indeed, the Circuit has repeatedly "stressed that the liberal concepts of

notice pleading embodied in the Federal Rules do not require the pleading of legal theories."

Empagran S.A. v. F. Hoffman-LaRoche, Ltd., 388 F.3d 337, 341 (D.C. Cir. 2004) (quoting

Hanson v. Hoffmann, 628 F.2d 42, 53 (D.C. Cir. 1980) (internal quotation marks omitted)); see

also 12 James Wm. Moore, et al., Moore's Federal Practice § 8.04[3] (4th ed. 2006) (stating that

"Rule 8(a)(2) does not require a claimant to set forth any legal theory justifying the relief sought

on the facts alleged, but does require sufficient factual averments to show that the claimant may

be entitled to some relief") (footnote omitted).

 In Hanson v. Hoffmann, for example, the Circuit held that the plaintiff had stated a claim

under the First Amendment even though the complaint itself "did not explicitly do so," where (1)

the plaintiff had made "the basic factual allegation" that her exercise of free speech had led to her

dismissal, and (2) "[a] generous reading of her present complaint . . . encompass[ed] a free

speech claim." <u>Hanson</u>, 628 F.2d at 53.  Here, as in <u>Hanson</u>, the plaintiff has made the "basic

factual allegation" that she was suspended due to her refusal on religious grounds to take a

mandatory PPD test, and "a generous reading of her present complaint" certainly encompasses a

claim for religious discrimination under the DCHRA.  <u>Id.</u>  Thus, although the plaintiff's

complaint could certainly have set forth her claims for both racial and religious discrimination

with greater clarity, the Court finds that it is enough that the plaintiff alleged facts giving rise to

an inference of religious discrimination, Am. Compl. ¶¶ 21(j)-(m), while generally stating an

express claim for relief under the DCHRA, <u>id.</u> ¶ 25 (alleging that the defendants "have

intentionally engaged in conduct violative of [the] [p]laintiff's rights as secured by the

[DCHRA]").  <u>See</u> <u>Atchinson</u>, 73 F.3d at 423 (holding that "a plaintiff need not plead multiple

instances of misconduct" when stating a claim under a particular statute, as long as the complaint

puts the defendant "on notice of the nature and basis of [the] plaintiff's claim") (emphasis

omitted).  "A court may deny a motion to dismiss or for summary judgment on the basis of a

legal theory never embraced by the plaintiff, as long as that theory is supported by the facts

alleged and as long as the defendant is not prejudiced on the merits."  <u>Hanson</u>, 628 F.2d at 53

n.11 (internal citations omitted).  Accordingly, the Court concludes that while imperfectly pled,

the plaintiff's amended complaint sufficed to put the defendants on notice regarding a claim of

religious discrimination under the DCHRA.  <u>See</u> <u>Arent v. Shalala</u>, 70 F.3d 610, 618 (D.C. Cir.

1995) (holding that "lack of specificity is not fatal [to a complaint] so long as the defendant is

given fair notice of the plaintiff's claim," even where "[the] complaint is ambiguous on its face"

as to precisely which claim the plaintiff intended to bring) (internal quotation marks and citations omitted).

The defendants further argue that "[t]he natural narrowing of claims and issues through the pretrial process"—specifically, the parties' Joint Statement of the Case and portions of the plaintiff's deposition testimony—"made [it] clear that [the] [p]laintiff was not pursuing a religious discrimination claim." Defs.' Mot. at 6; see id., Ex. A (Joint Statement of Case) at 1-2 ("Joint Statement"); id., Ex. B (excerpts of August 26, 2004 deposition of LaShawn Lemmons) ("Deposition"). The Joint Statement, which was filed by the parties prior to the initial scheduling conference in this case in accordance with Local Civil Rule 16.3, makes no mention of any claims arising from the plaintiff's religious beliefs. Joint Statement at 1-2; see also LCvR 16.3 (requiring parties to confer prior to a scheduling conference and submit to the Court a report concerning various scheduling issues likely to arise in the litigation). Moreover, it is entirely silent regarding any claim specifically related to the plaintiff's November 2003 suspension following her refusal to submit to the Hospital's annual PPD skin test.[17] Joint Statement at 1-2. The relevant portion of the Joint Statement states, in full:

> [The] [p]laintiff is a Laboratory Technician for the Hospital. She is suing the Hospital for discrimination and retaliation under the [DCHRA] and [Section 1981]. . . . Her claims arise from her assertions that the [d]efendants retaliated and discriminated against her because of her race and her alleged protected activity of reporting OSHA violations she believed the Hospital was committing in its handling and storage of tuberculosis samples.

---

[17] Notably, the defendants do not contend that the plaintiff has abandoned all claims relating to this suspension. See, e.g., Defs.' Sum. Judg. Mot. at 23 (arguing that "[the] [p]laintiff's retaliation and discrimination claims based on her 2003 suspension for refusing to take her PPD test are the only timely DCHRA claims alleged in her Amended Complaint").

Id. at 1.  In addition, the deposition testimony cited by the defendants purports to demonstrate that the plaintiff intended only to bring a claim for retaliation—and not for religious discrimination—in connection with her 2003 suspension.[18]  Defs.' Sum. Judg. Mot. at 7-8; see Deposition at 208-09, 211.  However, it is undisputed that neither the Joint Statement nor the plaintiff's deposition testimony contain any express statement that the plaintiff had chosen to narrow her legal claims by abandoning her cause of action for religious discrimination under the DCHRA, whether by formally amending her complaint or otherwise.  See generally Joint Statement; Deposition.

It is true that the pretrial procedures set forth in the Federal Rules are intended "to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues," Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (quoting Conley, 355 U.S. at 47-48).  However, given the well-settled "jurisprudential preference . . . for adjudication on the merits rather than on the basis of formalities," Ciralsky, 355 F.3d at 674 (internal quotation marks and citation omitted), the Court is reluctant to conclude on the record before it that the plaintiff might have abandoned or waived her religious discrimination claim by sheer implication during the discovery process.  See also Swierkiewicz,

---

[18]  The plaintiff disputes the defendants' contention that her statements during the deposition could be construed, even implicitly, as an abandonment of her claim of religious discrimination.  Pl.'s Opp. at 6-9.  Instead, the plaintiff asserts that in her deposition testimony, she "explained her religious beliefs, her efforts to obtain an accommodation for her religious beliefs, and how she believed the requirement that she take the PPD test violated her religious beliefs."  Id. at 6.  As further discussed below, in the absence of an express statement during the deposition that the plaintiff was abandoning her religious discrimination claim, it is unnecessary to delve into the patchwork deposition record provided by both sides to assess the truth and accuracy of the parties' respective representations.  At the very least, however, it is clear from the deposition that the defendants never asked the plaintiff directly whether she was bringing a religious discrimination claim, nor did she expressly indicate that she was no longer articulating a cause of action based on religious discrimination.  See generally Deposition; cf. Jones v. HSBC Bank USA, Civ. No. 00-532A, 2004 WL 1563080, at *3 (W.D.N.Y. June 17, 2004) (finding that "[t]he plaintiff did not affirmatively state that she intended to abandon her claim of retaliation . . ., nor was she asked that question").

534 U.S. at 514 (stating that the purpose of the "simplified pleading system [is] to focus litigation on the merits of the claim") (citation omitted).  This reluctance is particularly acute when the claimant represents, as the plaintiff does here in opposing the defendants' motion for reconsideration, that she believes that her religious discrimination claim remains alive.  See Pl.'s Opp. at 6, 10.  Nevertheless, the Court will examine the pertinent authority to determine whether, and under what circumstances, a claim for which fair notice has been afforded the defendants in the complaint can be simply abandoned, consciously or inadvertently, along the road of the pretrial process.

The Court begins by noting that nothing in the Federal Rules of Civil Procedure specifically provides for the abandonment of an individual legal claim through deposition testimony or joint filings setting forth a preliminary statement of the case.  For example, Federal Rule of Civil Procedure 41, which allows plaintiffs to voluntarily dismiss an action without permission of the Court "by filing a stipulation of dismissal signed by all parties who have appeared in the action," Fed. R. Civ. P. 41(a)(1), is not the appropriate vehicle should a plaintiff decide to "unequivocally abandon[]" a particular claim out of several, Defs.' Mot. at 9.  Rather, the voluntary elimination or dismissal of fewer than all of a plaintiff's claims may occur only by amendment of the complaint pursuant to Federal Rule of Civil Procedure 15.  See, e.g., Hells Canyon Pres. Council v. U.S. Forest Serv., 403 F.3d 683, 687 (9th Cir. 2005) (stating that "withdrawals of individual claims against a given defendant are governed by [Federal Rule of Civil Procedure] 15, which addresses amendments to pleadings") (citation omitted); see also 8 James Wm. Moore, et al., Moore's Federal Practice §41.21[2] (4th ed. 2006) (stating that "[a] plaintiff wishing to eliminate particular claims or issues from the action should amend the

complaint under Rule 15(a) rather than dismiss under Rule 41(a)").[19]  Rule 15 motions for leave

to amend must be made in writing and must "set forth with particularity the relief requested and

the grounds supporting the request."  3 James Wm. Moore, et al., Moore's Federal Practice

§15.17[1] (4th ed. 2006) (citing cases); see also Fed. R. Civ. P. 7(b)(1).  In addition, under this

Court's local civil rules, such motions must be accompanied by a copy of the proposed

amendment.  LCvR 7(i) (stating that "[a] motion for leave to file an amended pleading shall be

accompanied by an original of the proposed pleading as amended"); see Gov't of Guam v. Am.

President Lines, 28 F.3d 142, 150 (D.C. Cir. 1994) (stating that "[t]he normal procedure for

requesting an amendment to the complaint in federal court is to file a [Rule 15] motion to amend

together with the proposed amendment or new pleading") (internal quotation marks and citation

omitted).  The defendants do not, and cannot, argue that the plaintiff's purported abandonment of

her religious discrimination claim conforms to this standard.  See generally Defs.' Mot.; Defs.'

Reply.  Moreover, amendment of pleadings may occur as of right only until a responsive

pleading has been filed.  Fed. R. Civ. P. 15(a).  Because the defendants responded to the

plaintiff's amended complaint with an answer on May 20, 2004, the plaintiff was thereafter

barred from amending her complaint except "by leave of court or by written consent of the

adverse party," an additional procedural threshold that has not been satisfied in this case.  Id.

Accordingly, for all of these reasons, the Court cannot construe the Joint Statement or the

plaintiff's deposition testimony as a formal motion for leave to amend her complaint under the

---

[19]   The only other avenue under the Federal Rules by which fewer than all claims may be dismissed from a
complaint is pursuant to the involuntary dismissal provision of Rule 41(b).  However, while the Court has discretion
to deem that Rule 41(b) dismissal is appropriate if a plaintiff has failed to prosecute a given claim, this is an extreme
remedy which is employed "only after less dire alternatives have been explored without success."  Gardner v. United
States, 211 F.3d 1305, 1308 (D.C. Cir. 2000).  The defendants have not moved for involuntary dismissal under Rule
41(b), and such a remedy would clearly not be appropriate here.

Federal Rules to withdraw or dismiss her claim of religious discrimination.[20]  See Gov't of

Guam, 28 F.3d at 150 (concluding that "neither [statements made in the plaintiffs'] opposition to

the motion to dismiss[] nor [the plaintiffs'] counsel's reference to the assertion of new legal

theories contingent on future administrative action was sufficient to constitute a [Rule 15(a)

motion] to amend the complaint") (citations omitted).

     Although the plaintiff cannot technically withdraw or dismiss fewer than all of the claims

from her complaint without availing herself of the formal Rule 15 process,[21] some courts do

recognize the possibility that a claim might nevertheless be expressly and unilaterally abandoned

during discovery if certain conditions are met.  See Defs.' Mot. at 9-10 (citing White v.

Schlesinger, Civ. No. 79-1017, Slip Op. at 3 (D.D.C. Dec. 5, 1979), and McDowell v. Father

Flanagan's Boys' Home, Civ. No. 03-2058, 2005 WL 1006022, at *8 (E.D.N.Y. Apr. 26, 2005)).

However, despite the defendants' citation to a cursory and off-hand reference in an unpublished

1979 district court opinion, the District of Columbia Circuit has never recognized, nor even

discussed, the propriety of this sort of extra-procedural abandonment.  Id.  Furthermore, even in

those circuits that have explicitly considered whether plaintiffs have abandoned their claims

through events occurring during the discovery process, the conclusion that such abandonment has

occurred appears to require a far clearer statement of the plaintiff's intent to cease pursuing a

particular legal claim than what occurred in this case.  See, e.g., Versarge v. Township of

Clinton, N.J., 984 F.2d 1359, 1363 & n.1 (3d Cir. 1993) (concluding that the plaintiff had

---

[20]  This is true even if the plaintiff now represented to the Court that she intended at the time to seek leave to amend her complaint in this manner, which, of course, she does not.

[21]  Although all of the plaintiff's other claims have now been dismissed, her complaint consisted of multiple claims at the time the events occurred that the defendants now assert amounted to an abandonment of her claim of religious discrimination.

abandoned claim for monetary damages when the plaintiff's counsel, during the plaintiff's

deposition, expressly stated that "[w]e've abandoned that claim"); <u>Hailes v. Compudyne Corp.</u>,

Civ. No. 2:05-54, 2007 WL 60923, at *1 n.1 (M.D. Ala. Jan. 8, 2007) (finding that plaintiff had

abandoned cause of action for retaliation when "he testified in his deposition that he has no such

claim"); <u>see</u> <u>also</u> <u>Eguia v. Tompkins</u>, 756 F.2d 1130, 1137 & n.9 (5th Cir. 1985) (rejecting the

defendants' argument that the plaintiff had "waived all claims in his pleadings except the claim

for denial of due process" by stating, in a motion for a protective order, that "[the] action

concern[ed] . . . the plaintiff's rights to due process of law"); <u>McGuire v. Bourbon Cmty. Hosp.</u>,

Civ. No. 04-480, 2006 WL 208826, at *3 (E.D. Ky. Jan. 25, 2006) (finding no support for the

"theory of 'abandonment by deposition'" and holding that "the legal issue of whether a claim has

been abandoned or waived requires much more than a lay person's opinion [provided in

deposition testimony]").

   Indeed, in cases where abandonment has occurred, courts have almost uniformly founded

such a determination on (1) an <u>explicit and unambiguous</u> statement by the plaintiff that a

particular claim was no longer being brought or (2) factual assertions made in discovery, usually

during deposition testimony, that contradict or otherwise fatally undermine the factual predicate

for one or more of the plaintiff's legal claims as articulated in the complaint.  <u>See</u>, <u>e.g.</u>, <u>Versarge</u>,

984 F.2d at 1363 & n.1 (finding abandonment based on the plaintiff's express deposition

testimony); <u>Russell v. Degussa Engineered Carbons</u>, Civ. No. C-06-93, 2007 WL 433284, at *12

(S.D. Tex. Feb. 6, 2007) (finding that plaintiff had abandoned claim when his deposition

testimony contradicted factual allegations made in his complaint); <u>Nagel v. Sykes Realty, Inc.</u>,

400 F. Supp. 2d 1198, 1203 (D.N.D. 2005) (concluding that claim against particular defendant

30

was "abandoned and . . . [un]supported by any evidence in the record" when plaintiff did not

identify that particular defendant in her deposition or in any pleadings other than the complaint).

In <u>Cooks v. Potter</u>, for example, the Seventh Circuit upheld the district court's conclusion

that the plaintiff "had abandoned her claims of race and gender discrimination by conceding

when deposed that her reassignment had not been due to her race or gender." <u>Cooks v. Potter</u>,

109 Fed. Appx. 810, 812 (7th Cir. 2004) (also finding that even though the plaintiff claimed that

her deposition testimony was in error, "she [did] not point to any evidence in the record that

could support a race or gender discrimination claim").  Here, by contrast, the plaintiff makes no

such concessions.  She was never expressly asked, nor did she volunteer, whether she believed

that the defendants had ever discriminated her on the basis of her religion.  <u>See generally</u>

Deposition.  Nor does the plaintiff make factual assertions in her deposition testimony that

contradict the factual predicate set forth in her complaint.  Rather, she expands upon her

membership in the Congregation of Universal Wisdom, her refusal to take the PPD tests based on

both religious and medical objections, and her subsequent suspension by the defendants.  <u>See id.</u>

at 181-190.  While the defendants are correct that certain of the plaintiff's responses suggest that

she viewed the initial requirement that she submit to the PPD test as retaliation for past

harassment complaints, Defs.' Mot. at 7-8 (quoting Deposition at 208-09), neither the plaintiff's

words nor the relevant legal standards foreclose the possibility that the defendants (1) retaliated

against the plaintiff by declining to continue to exempt her from the PPD test and <u>also</u> (2)

discriminated against the plaintiff by failing to accommodate her religious objection to the test,

once it had been raised.  <u>See Atchinson</u>, 73 F.3d at 423 (holding that "a plaintiff need not plead

multiple instances of misconduct" when stating a claim under a particular statute, as long as the

31

complaint puts the defendant "on notice of the nature and basis of [the] plaintiff's claim")

(emphasis omitted).  The deposition testimony brandished by the defendants is therefore

inconclusive to demonstrate the plaintiff's abandonment of her religious discrimination claim.

See Collins v. U.S. Playing Card Co., ___ F. Supp. 2d. ____, ____, Civ. No. 05-637, 2006 WL

3231309, at *11 (S.D. Ohio Nov. 6, 2006) (concluding that plaintiff's deposition testimony that

defendant had not retaliated against him was not dispositive evidence that plaintiff had

abandoned claim of retaliation).

Moreover, because "the District of Columbia Court of Appeals has not squarely

addressed the standard by which claims of religious discrimination—particularly those such as

the plaintiff's—are to be analyzed under the DCHRA," Opinion at 27; see also id. at 27-31

(discussing distinction between disparate treatment claims and failure to accommodate claims in

District of Columbia law), it remains a novel issue of state law, and thus it is not for this Court to

decide, see 28 U.S.C. § 1367(c)(1) (2000), what statements the plaintiff could have made in her

deposition, absent an explicit declaration that she had "abandoned that claim," Versarge, 984

F.2d at 1363 n.1, that would truly constitute an abandonment of her claim of religious

discrimination.  See, e.g., Sims v. Halliburton Co., 185 F.3d 875, 1999 WL 495629, at *12 (10th

Cir. 1999) (concluding that the plaintiff had not made factual concessions in his deposition

sufficient to abandon his claim of age discrimination); Windsor v. Bethesda Gen. Hosp., 523

F.2d 891, 894 (8th Cir. 1975) (finding "no positive evidence of abandonment" of well-plead

racial discrimination claims in plaintiff's deposition, particularly when resolving all inferences in

favor of the plaintiff in accordance with the applicable legal standard).  In any event, even

assuming that the District of Columbia Circuit were to recognize the "theory of 'abandonment by

32

deposition'" in the abstract sense, <u>McGuire</u>, Civ. No. 04-480, 2006 WL 208826, at \*3, the Court cannot say that the statements made by the plaintiff during her deposition testimony would rise to that level.  <u>Cf.</u> <u>Ciralsky</u>, 355 F.3d at 674 (noting the "jurisprudential preference . . . for adjudication on the merits rather than on the basis of formalities").  Thus, in the absence of an <u>express</u> and <u>explicit</u> indication that the plaintiff intended to leave one or more of her claims by the wayside in the course of the litigation—such as a notice to amend the complaint pursuant to Rule 15 or something equivalently unambiguous—the Court agrees with the plaintiff that "[t]he complaint controls on what issues are being presented." <u>Id.</u> at 6.  And because the Court concludes, as discussed above, that the complaint does articulate a claim of religious discrimination under the DCHRA, the defendants' motion for reconsideration must be denied.

## IV. Conclusion

In evaluating the parties' respective motions for reconsideration, the Court is mindful that its discretion to modify or otherwise revisit its prior conclusions is "limited by the law of the case doctrine and subject to the caveat that, where litigants have once battled for the [C]ourt's decision, they should neither be required, nor without good reason permitted, to battle for it again." <u>Judicial Watch</u>, ___ F. Supp. 2d at ____, 2006 WL 3600329, at \*7 (internal quotation marks and citation omitted).  In this matter, after carefully reviewing the arguments of both sides, the Court concludes that neither party has presented any compelling reason why its May 4, 2006 Order should be disturbed.  The Court therefore denies the plaintiff's motion for reconsideration of its grant of summary judgment to the defendants on the plaintiff's retaliation claim.  It also denies the defendants' motion for reconsideration of its conclusion that the plaintiff's amended complaint stated a viable cause of action for religious discrimination under the DCHRA.

Furthermore, for the reasons articulated in the Court's May 4, 2006 Memorandum Opinion, the

plaintiff's religious discrimination claim shall be remanded forthwith to the Superior Court of the

District of Columbia.

      **SO ORDERED** this 1st day of March, 2007.[22]

REGGIE B. WALTON
United States District Judge

---

[22] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

34